UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MICKEY MASON,    Plaintiff, | ) ) ) |
| v. | )    24-cv-4170-MMM ) |
| LATOYA HUGHES, et al.,    Defendants. | ) ) ) |

## MERIT REVIEW ORDER

Pro se Plaintiff Mickey Mason, who is in the custody of the Illinois Department of Corrections ("IDOC"), has filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, which is before the Court for screening. Plaintiff has also filed a Motion to Provide Court with Emergency Issues (Doc. 8).

### I. Complaint

**A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

Plaintiff seeks to bring claims against the following Defendants at Hill Correctional Center ("Hill"): Warden Tyrone Baker, Officer Jackson Stanley, Internal Affairs ("I/A") Lieutenant Brandon McCune, Intelligence Unit ("Intel") Lieutenant Aaron Cox, Intel Officers Roy Little, Jason Sharp, and John Livingston, Major Ross Ford, Major Paul Lawson, Lieutenant Martin Matherly, Officer Range, Prison Rape Elimination Act ("PREA") Coordinator Rina M. Martinez-Bates, Lieutenant Joey D. Hodgeman, Counselor/Grievance Officer Katherine Linboom, Hearing Committee Chairperson/Property Officer Kendall W. Hocker, and mental health provider Melissa Shenkel.

Plaintiff's Complaint also lists as Defendants IDOC Acting Director LaToya Hughes, IDOC Administrative Review Board ("ARB") staff member Jeremy Bonnett, IDOC Chief of Investigations & Intelligence Unit Edward Escamilla, and Illinois State Police ("ISP") Captain Jeff File.

Plaintiff filed a prior lawsuit against Hill Correctional Center staff in December 2023: Central District Case No. 23-cv-2444-SLD.  In that suit, Plaintiff complained of interference with his emails and other messages, as well as conditions of confinement including exposure to feces and urine.

In the instant suit, Plaintiff alleges that beginning in June or July 2023 his cellhouse was subjected to property/correspondence box compliance checks far more often than other cellhouses.  He alleged this was part of an ongoing retaliation or harassment campaign by various Defendants and that he notified Baker and Hughes

that these checks did not comply with the timing requirements in the relevant Administrative Directive(s).

On February 27, 2024, Plaintiff submitted a complaint to ISP, seeking a restraining order due to alleged harassment, retaliation, and threats by I/A and Intel members McCune, Little, and Livingston. However, McCune himself was the point person at Hill for ISP investigations and served as a liaison between ISP and individuals in custody. Plaintiff alleges McCune's involvement was a conflict of interest because Plaintiff had complained to ISP about McCune's conduct.

On March 20, 2024, Plaintiff alleges that there was a box compliance check around 7:00 a.m. in which Plaintiff was told to exit the cell for a pat search. Plaintiff alleges that Defendant Jackson conducted a pat search in which he "pushed the side of his hand up [Plaintiff's] but crack and rubbed [Plaintiff's] genitals (balls) with his hand." Plaintiff alleges that Defendants Range, Ford, Lawson, Cox, and Matherly were present and watched but did not intervene in Jackson's search, even though Jackson was in training. Plaintiff alleges that the Administrative Directive does not authorize pat down searches during morning box checks and also alleges there was no reason for Jackson to feel his legs because he was wearing shorts. Plaintiff filed a PREA complaint.

During a video visit with his cousin on March 22, 2024, Plaintiff asked his cousin to contact ISP regarding the alleged sexual assault by Defendant Jackson. Plaintiff alleges that he was referred to mental health following this call, because I/A and Intel monitored video visits, and that later Defendant Shenkel and other mental health staff exposed his confidential information to I/A and Intel in violation of Health Insurance

Portability and Accountability Act ("HIPAA"). Plaintiff also alleges that he sent copies of his ISP complaint to the ARB and to Defendant Hughes.

On March 26, 2024, Defendants Little and Sharp allegedly attempted to get Plaintiff to sign paperwork saying that he was a member of the Gangster Disciples (an IDOC-designated security threat group ("STG")), in retaliation for Plaintiff's PREA complaint. Plaintiff alleges that he had previously refused to sign off on the same information in May 2023 and told Defendants he had never been affiliated and should not have had the STG designation on his documents.

On April 5, 2024, Defendant File sent a letter to Plaintiff, communicating that ISP had conducted a preliminary review of Plaintiff's ISP complaint and determined the complaint did not meet the criteria for investigation by ISP at that time. Defendant File indicated that the nature of the complaint fell within the jurisdiction of IDOC Investigations, and ISP forwarded Plaintiff's Complaint to that department.

Plaintiff alleges that, despite filing a PREA complaint with Defendant Martinez-Bates against Defendant Jackson, Plaintiff still had to interact with Defendant Jackson on various dates throughout March to August 2024, in violation of an Administrative Directive that directed his housing assignment be reviewed so that he would not have contact with his alleged sexual abuser. Plaintiff alleges that he specifically complained to Defendant Hodgeman about this issue, and alleges that various Defendants engaged in a criminal conspiracy to protect Defendant Jackson and to cover up the sexual assault.

On April 22, 2024, Plaintiff alleges that he and other inmates were strip-searched following in-person visits. Plaintiff's request not to be searched by Defendant Jackson was honored, but Plaintiff complains that his search by a Doe correctional officer was in violation of *Bell v. Wolfish*, 441 U.S. 520 (1979).

On April 22, 2024, Plaintiff alleges that Defendant McCune called Plaintiff into his office in response to a PREA Complaint that Plaintiff had sent to the Governor's Office. Defendant McCune required Plaintiff to sign a statement saying that his emails were "fine" and that other inmates also had had problems with theirs. Plaintiff alleges that he would have been sent to segregation if he had not signed McCune's statement. Plaintiff also complained to Defendant McCune about Jackson's March 2024 search during this meeting.

On May 28, 2024, Plaintiff received a memorandum from IDOC Investigations and Intelligence Unit Chief, Defendant Escamilla, regarding the Unit's investigation into Plaintiff's allegation of sexual assault during a pat search by Jackson. Defendant Escamilla indicated that after investigation Plaintiff's allegations were unsubstantiated, that pat searches are performed in the same manner regardless of whether the individual is wearing pants or shorts, and that the search was properly performed with the back of the hand.

Finally, on August 14, 2024, Defendant McCune issued Plaintiff a disciplinary ticket for a 310-Abuse of Privileges charge because Plaintiff asked an outside caller to connect him on a three-way phone call. According to the relevant IDOC rules attached as exhibits to Plaintiff's Complaints, a 310 charge carries a penalty of 0 days in

restrictive housing. However, on August 21, 2024, Plaintiff was sentenced to 30 days in restrictive housing at a hearing held by Defendant Hocker. When Plaintiff asked for an explanation of why the charge would carry 30 days Defendant Hocker allegedly told him: "Lieutenant McCune told me give you C grade, send you to Restrictive Housing for 30 days due to some lawsuit you filed on him."

Plaintiff alleges that while in restrictive housing there was black mold in the cells and shower areas, birds living in the housing unit with bird feces "everywhere," and no hot water in the showers or cells. While in segregation or restrictive housing, inmates are not allowed cleaning supplies, nor do maintenance or inmate porters clean these cells. Plaintiff alleges these conditions were well known to Defendants Baker, McCune, and Hocker.

**C. Analysis**

For the following reasons, the Court holds that Plaintiff may proceed only on a First Amendment retaliation claim and Fourteenth Amendment Due Process claim against Defendants McCune and Hocker as well as an Eighth Amendment conditions of confinement claim against Defendants Baker, McCune, and Hocker.

Plaintiff's pat search by Defendant Jackson does not give rise to a constitutional claim. In general, based on Supreme Court and Seventh Circuit precedent, a prisoner "clearly has no ground on which he could challenge the mere fact that he was frisked" with a pat-down search. *Smith v. Fairman*, 678 F.2d 52, 54 (7th Cir. 1982). Even so, a pat-down search may run afoul of the Constitution if, for example, the officer grabs the

prisoner's genitals or conducts the search in a harassing, degrading manner unrelated to legitimate security needs. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).

Here, Plaintiff has alleged that Defendant Jackson made a "rubbing" contact with his genitals during the search, but the Complaint also suggests that the contact was made with the back of Jackson's hand and therefore did not constitute "grabbing" of Plaintiff's genitals. And while Plaintiff alleges that the pat search was not authorized or necessary under relevant Administrative Directives, "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state law or, in this case, departmental regulations and…practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Given that the search by Defendant Jackson does not give rise to a constitutional claim, none of the Defendants may be liable for failure to intervene during that search or deliberate indifference for failure to properly investigate the search.

Plaintiff likewise states no claim based upon the strip search conducted by another officer after an in-person visit. *See Smith v. Fairman*, 678 F.2d 52, 54 (7th Cir. 1982), *citing Bell v. Wolfish*, 441 U.S. 520, 542 (1979) ("[T]he Supreme Court held that requiring inmates to submit to so serious an intrusion as body-cavity searches after every contact visit with a person outside the institution did not violate the Fourth Amendment."); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation.").

Turning to Plaintiff's claims that certain Defendants have violated other Administrative Directives, including policies around PREA and Plaintiff's continued exposure to Jackson, as indicated above rule violations do not give rise to claims under § 1983. *See Scott*, 346 F.3d at 760. So too, neither PREA itself nor HIPAA give rise to cognizable claims. *See Closson v. Kohlhepp*, 2021 WL 3363139, at *2 (S.D. Ind. Aug. 3, 2021) (PREA); *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) (HIPAA).

As for Plaintiff's allegation that he was sent to segregation in retaliation for filing other complaints, in order to make out a prima facie case of First Amendment retaliation, a plaintiff must allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff has done so here, especially where he has shown that the time in segregation was imposed despite department rules indicating no segregation or restrictive housing was to be imposed for the Abuse of Privileges charge. *See Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (violation of a prison's rule may be relevant evidence to show malicious intent or retaliatory motive, even if it does not give rise to a standalone constitutional claim).

Plaintiff's time in segregation may also give rise to a Due Process claim against Defendants McCune and Hocker because he has alleged that he was deprived of a protected liberty interest, due to the unusually harsh conditions in segregation, and that he did not receive the process that was due because Defendant Hocker imposed the

punishment as a result of Defendant McCune's retaliatory request. *See Armato v. Grounds*, 766 F.3d 713, 721–22 (7th Cir. 2014) (elements of Due Process claim); *Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019) (liberty interest implicated if plaintiff alleges that the conditions of his segregation were "unusually harsh").

Finally, these same segregation conditions give rise to a conditions of confinement claim. "[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief." *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (It is "clearly established" that confining inmates to feces-covered cells without running water violates the Eighth Amendment (collecting cases)). Plaintiff has adequately alleged that Defendants Defendants Baker, McCune, and Hocker had knowledge of the conditions of segregation that included black mold, bird feces, no hot water and no cleaning supplies.

## II. Motion Regarding "Emergency Issues"

Plaintiff has also filed a Motion entitled "Motion to Provide Court with Emergency Issues Due to IDOC Employees Openly Conspiring with Defendants." In this Motion, Plaintiff alleges that he has been transferred to other IDOC facilities (Lawrence Correctional Center, Danville Correctional Center) and noticed that certain property, including legal documents relevant to pending cases 19-cv-1375, 08-cr-1839302, and 19-cv-1019 is now missing. He alleges retaliation or conspiracy by IDOC

staff responsible for his missing property and asks this Court to impose sanctions on Lawrence Correctional Center and IDOC Acting Director Hughes.

The allegations in Plaintiff's Motion are not related to the claims proceeding in this suit and, therefore, the Court lacks authority to grant any relief. *Pacific Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).

**IT IS THEREFORE ORDERED:**

**1)     According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with** a **First Amendment retaliation claim and Fourteenth Amendment Due Process claim against Defendants McCune and Hocker as well as an Eighth Amendment conditions of confinement claim against Defendants Baker, McCune, and Hocker.  Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.  The Clerk is therefore directed to DISMISS Defendants Hughes, Little, Sharp, Livingston, Ford, Lawson, Cox, Matherly, Range, Martinez-Bates, Stanley, Escamilla, File, Hodgeman, Bonnett, Linboom, and Shenkel.**

**2)     Plaintiff's Motion to Provide Court with Emergency Issues [8] is DENIED.**

**3)     Plaintiff's Motions for Status [6], [10] are MOOT.**

**4)     This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

**5)     The Court will attempt service on Defendant by mailing waivers of service. Defendants have sixty days from service to file an Answer. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

**6)     Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating**

service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth a Defendant's positions. The Court does not rule on the merits of those positions unless and until a Defendant files a motion. Therefore, no response to an Answer is necessary or will be considered.

8) This District uses electronic filing, which means that, after Defendants' counsel have filed an appearance, counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Defendants' counsel is granted leave to depose Plaintiff. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately notify the Court, in writing, of any change in her mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

11) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require the Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

12) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

13) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED May 14, 2025.

s/Michael M. Mihm
MICHAEL M. MIHM
U.S. DISTRICT JUDGE